**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CHANEL, INC.,

        Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Chanel, Inc. ("Plaintiff" or "Chanel"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, offering for sale, selling, and/or distributing goods bearing counterfeits and confusingly similar imitations of Chanel's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Chanel alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Chanel's state law claims because those claims are so related to the federal claims that

they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Chanel is a corporation organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. Chanel operates boutiques throughout the world, including within this district. Chanel is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those identified in Paragraph 14 below. Chanel offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States. Defendants, through the offer to sell and sale of counterfeit and infringing Chanel branded products, are directly and unfairly competing with

Chanel's economic interests in the United States, including the State of Florida and causing Chanel irreparable harm within this jurisdiction.

5.      Like many other famous trademark owners, Chanel suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Chanel's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Chanel name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Chanel expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies such as Chanel to expend significant resources across a wide spectrum of efforts in order to protect both consumers and itself from confusion and the erosion of the goodwill embodied in Chanel's brand.

## THE DEFENDANTS

7.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States to redistribute their products

from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

8.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

9.      Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Chanel's trademarks as described herein.

10.     Defendants directly engage in unfair competition with Chanel by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of one or more of Chanel's trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional seller identification aliases not yet known to Chanel. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Chanel-branded goods into the State.

11.     Defendants have registered, established, or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have anonymously registered and/or maintained some of their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

12.     Defendants will likely continue to register or acquire new seller identification names, or other aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Chanel's trademarks unless preliminarily and permanently enjoined.

13.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Chanel's trademarks, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement schemes and cause harm to Chanel. Moreover, Defendants are using Chanel's famous brand name and/or trademarks to drive Internet consumer traffic to their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Chanel's legitimate marketplace and intellectual property rights at Chanel's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

14.     Chanel is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| ⊂⊃ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |

| | | | |
|---|---|---|---|
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ⬭⬭ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| RUE CAMBON | 2,964,843 | July 5, 2005 | IC 018 - Handbags |
| | 5,912,273 | November 19, 2019 | IC 018 - Handbags |

The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Chanel Marks are attached hereto as Composite Exhibit "1."

15.     The Chanel Marks have been used in interstate commerce to identify and distinguish Chanel's high-quality goods for an extended period.

16.     The Chanel Marks have been used in commerce by Chanel long prior in time to Defendants' use of copies of those Marks. The Chanel Marks have never been assigned or licensed to any of the Defendants in this matter.

17.     The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. Chanel has carefully monitored and policed the use of the Chanel Marks.

18.     The Chanel Marks are well-known and famous and have been for many years. Chanel expends substantial resources developing, advertising, and otherwise promoting the Chanel

Marks and products bearing the Chanel Marks. The Chanel Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

19.     Further, Chanel extensively uses, advertises, and promotes the Chanel Marks in the United States in association with the sale of high-quality goods. Chanel expends substantial resources promoting the Chanel Marks and products bearing the Chanel Marks.

20.     As a result of Chanel's efforts, members of the consuming public readily identify merchandise bearing or sold using the Chanel Marks, as being high-quality goods sponsored and approved by Chanel.

21.     Accordingly, the Chanel Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

22.     Genuine goods bearing the Chanel Marks are widely legitimately advertised and promoted by Chanel, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Chanel's overall marketing and consumer education efforts. Thus, Chanel expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Chanel and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Chanel brand and the goods sold thereunder, and the problems associated with the counterfeiting of Chanel's trademarks.

**Defendants' Infringing Activities**

23.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Chanel Marks (the "Counterfeit Goods") through at least the e-

commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Chanel Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using identical copies of one or more of the Chanel Marks for different quality goods. Chanel has used the Chanel Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Chanel's merchandise.

24.     Defendants' Counterfeit Goods are of a quality substantially different than that of Chanel's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Chanel despite Defendants' knowledge that they are without authority to use the Chanel Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Chanel.

25.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the Chanel Marks without Chanel's permission.

26.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Chanel Marks. Specifically, Defendants are using counterfeits and infringements of Chanel's famous name and the Chanel Marks to make their e-

commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Chanel and non-Chanel goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Chanel's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Chanel and the consuming public by (i) depriving Chanel and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Chanel's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Chanel Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Chanel's overall cost to market its goods and educate consumers about its brand via the Internet.

27.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Chanel and the consuming public for Defendants' own benefit.

28.     At all times relevant hereto, Defendants have had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

29.     Defendants' use of the Chanel Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Chanel's consent or authorization.

30.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on Chanel's goodwill and reputation. If Defendants'

intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Chanel and the consuming public will continue to be harmed.

31.    Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Chanel's genuine goods and Defendants' Counterfeit Goods, which there is not.

32.    Moreover, upon information and belief, at least Defendant Number 1 has registered its E-commerce Store Name using marks that are nearly identical and/or confusingly similar to at least one of the Chanel Marks (the "Cybersquatted E-commerce Store Name").

33.    Defendant Number 1 has registered and/or used the Cybersquatted E-commerce Store Name with the bad faith intent to profit from the Chanel Marks.

34.    Defendant Number 1 does not have, nor has it ever had, the right or authority to use the Chanel Marks. Further, the Chanel Marks have never been assigned or licensed to be used on the e-commerce store operating under the Cybersquatted E-commerce Store Name.

35.    Upon information and belief, Defendant Number 1 has provided false and/or misleading contact information when applying for the registration of its Cybersquatted E-commerce Store Name or has intentionally failed to maintain accurate contact information with respect to the registration of its Cybersquatted E-commerce Store Name.

36.    Defendant Number 1 has never used the E-commerce Store Name in connection with a bona fide offering of goods or services.

37.    Defendant Number 1 has not made any bona fide non-commercial or fair use of the Chanel Marks on the website accessible under the Cybersquatted E-commerce Store Name.

38.     Defendant Number 1 has intentionally incorporated at least one of the Chanel Marks in its Cybersquatted E-commerce Store Name to divert consumers looking for Chanel's Internet e-commerce store to its own Internet e-commerce store for commercial gain.

39.     Although Defendants are being named individually, Chanel has good cause to believe the E-commerce Store Names are all operated and/or controlled by the same individual and/or organization.

40.     At the very least, it is clear Defendants are either affiliated given the visibility of Defendants' various e-commerce stores and the similarity of their actions, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Chanel and the overall consumer market in which they operate because of Defendants' concurrent actions.

41.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Chanel.

42.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias seller identification names being used and/or controlled by them.

43.     Further, Defendants, upon information and belief, are likely to transfer or secrete their assets to avoid payment of any monetary judgment awarded to Chanel.

44.     Chanel has no adequate remedy at law.

45.     Chanel is suffering irreparable injury because of Defendants' unauthorized and wrongful use of the Chanel Marks. If Defendants' counterfeiting and infringing and unfairly

competitive activities are not preliminarily and permanently enjoined by this Court, Chanel and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

46.     The harm sustained by Chanel has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

47.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

48.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Chanel Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

49.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Chanel Marks. Defendants are continuously infringing and inducing others to infringe the Chanel Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing Chanel branded goods.

50.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

51.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Chanel and are unjustly enriching Defendants with profits at Chanel's expense.

52.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Chanel Marks in violation of Chanel's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

53.     Chanel has suffered and will continue to suffer irreparable injury while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

54.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

55.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Chanel Marks have been widely advertised and offered for sale throughout the United States via the Internet.

56.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one or more of the Chanel Marks are virtually identical in appearance to Chanel's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

57.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or

represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Chanel's detriment.

58.     Defendants have each authorized infringing uses of one or more of the Chanel Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

59.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Chanel Marks to unfairly compete with Chanel and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Chanel of valuable marketing and educational space online which would otherwise be available to Chanel and (ii) reducing the visibility of Chanel's genuine goods on the World Wide Web and across social media platforms.

60.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Chanel has no adequate remedy at law and has sustained both individual and indivisible injury caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Chanel will continue to suffer irreparable injury to its goodwill and business reputation, while Defendants are earning a substantial profit.

### COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d)) (Against Defendant Number 1 only)

62.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

63.     At all times relevant hereto, Chanel has been and still is the owner of the rights, title, and interest in and to the Chanel Marks.

64.     Defendant Number 1 has acted with the bad faith intent to profit from the Chanel Marks and the goodwill associated with the Chanel Marks by registering and using its Cybersquatted E-commerce Store Name.

65.     The Chanel Marks were already distinctive and famous at the time Defendant Number 1 registered the Cybersquatted E-commerce Store Name.

66.     Defendant Number 1 has no intellectual property rights in or to the Chanel Marks.

67.     The Cybersquatted E-commerce Store Name is identical to, confusingly similar to, or dilutive of at least one of the Chanel Marks.

68.     Defendant Number 1's conduct is done with knowledge and constitutes a willful violation of Chanel's rights in the Marks. At a minimum, the conduct of Defendant Number 1 constitutes reckless disregard for and willful blindness to Chanel's rights.

69.     Defendant Number 1's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

70.     Chanel has no adequate remedy at law.

71.     Chanel has suffered and will continue to suffer irreparable injury while Defendant Number 1 profits due to the above-described activities if this Defendant is not preliminarily and permanently enjoined, while Defendant Number 1 is earning a substantial profit.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

72.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

73.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale, of goods bearing and/or using marks that are virtually identical to one or more of the Chanel Marks in violation of Florida's common law of unfair competition.

74.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Chanel Marks. Defendants are also each using counterfeits and infringements of one or more of the Chanel Marks to unfairly compete with Chanel and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

75.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Chanel Marks.

76.     Chanel has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

**COUNT V - COMMON LAW TRADEMARK INFRINGEMENT**

77.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

78.     Chanel is the owner of all common law rights in and to the Chanel Marks.

79.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of the Chanel Marks.

80.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Chanel Marks.

81.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Chanel Marks.

82.     Chanel has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are earning a substantial profit.

## PRAYER FOR RELIEF

83.     WHEREFORE, Chanel demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Chanel Marks; from using the Chanel Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Chanel; from falsely representing themselves as being connected with Chanel, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any

way endorsed by, approved by, and/or associated with Chanel; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Chanel, or in any way endorsed by Chanel and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Chanel's name or trademarks; and from otherwise unfairly competing with Chanel.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Chanel Marks.

c.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Chanel's request, Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names, or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Chanel Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store name, thus removing them from the TLD zone files which link the E-

commerce Store Names, and any other e-commerce store names used by Defendants, to the IP address where the associated e-commerce store names are hosted.

      d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Chanel's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Chanel Marks at issue to Chanel's control so they may no longer be used for unlawful purposes.

      e.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Chanel's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engages in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

      f.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their E-commerce Store Name(s) and any other e-commerce store names used by Defendants, to Chanel and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      g.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines

to permanently delist or deindex the E-commerce Store Name(s) and any other e-commerce store names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Chanel to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Chanel Marks.

i.      Entry of an order requiring, upon Chanel's request, Defendants to request in writing permanent termination of any messaging services, e-commerce store names, and usernames they own, operate, or control on any messaging service and e-commerce marketplace.

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Chanel's request, the applicable governing Internet marketplace operators and/or administrators for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, disable and/or cease facilitating access to the E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Chanel Marks.

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Chanel's request, any Internet marketplace operators

and/or administrators, registrar and/or top level domain (TLD) Registry for the E-commerce Store Names and any other alias e-commerce store names being used by Defendants who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

l.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Chanel's request, any messaging service and Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks via the e-commerce store names operating under the E-commerce Store Names, and upon Chanel's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks associated with or linked to the same sellers or linked to any other alias e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

m.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and this Court's inherent authority that, upon Chanel's request, Defendants and any Internet marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the Chanel Marks in its inventory, possession, custody, or control, and surrender those goods to Chanel.

n.      Entry of an order requiring Defendants to account to and pay Chanel for all profits earned from Defendants' trademark counterfeiting and infringing and unfairly competitive

activities and that the profit award to Chanel be trebled, as provided for under 15 U.S.C. § 1117, or that Chanel be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

      o.    Entry of an Order requiring Defendant Number 1 to account to and pay Chanel for all profits earned from Defendant Number 1's cybersquatting activities and that the profit award to Chanel be trebled, as provided for under 15 U.S.C. §1117, or that Chanel be awarded statutory damages from Defendant Number 1 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted e-commerce store name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

      p.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Chanel's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

      q.    Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Chanel's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, including but not limited to, PayPal, Inc., and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or any other alias e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Chanel in partial satisfaction of the monetary judgment entered herein.

r. Entry of an award of pre-judgment interest on the judgment amount.

s. Entry of an order requiring Defendants, at Chanel's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

t. Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 30, 2023. Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
Christine Ann Daley (Fla. Bar No. 98482)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: christine@smgpa.cloud

Attorneys for Plaintiff, Chanel, Inc.

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**